## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WAYNE BARROW, as Trustee of the VOLETTA WALLACE REVOCABLE TRUST, | ) ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) ) | |
| v. | ) ) | C.A. No. 2025-0760-KSJM |
| FAITH EVANS, | ) ) ) | |
| Defendant. | ) ) | |
| and | ) ) | |
| NOTORIOUS B.I.G., LLC, | ) ) | |
| Nominal Defendant/ Counterclaim Plaintiff. | ) ) | |

### MEMORANDUM OPINION

Date Submitted: May 11, 2026
Date Decided: August 7, 2026

Scott B. Czerwonka, WILKS LAW, LLC, Wilmington, Delaware; Jay W. Freiberg, Yelena Rapoport, ELMAN FREIBERG PLLC, New York, New York; *Counsel for Plaintiff/Counterclaim Defendant Wayne Barrow, as Trustee of the Voletta Wallace Revocable Trust.*

Seth A. Niederman, Kasey H. DeSantis, FOX ROTHSCHILD LLP, Wilmington, Delaware; Lawrence C. Hinkle II, SANDERS ROBERTS LLP, Los Angeles, California; *Counsel for Defendant Faith Evans and Nominal Defendant Notorious B.I.G., LLC.*

**McCORMICK, C.**

In the song "Ten Crack Commandments" from The Notorious B.I.G.'s posthumously released *Life After Death* album, Christopher Wallace presciently cautioned: "Keep your family and business completely separated."[1] After Wallace's tragic death, however, his mother and widow did exactly the opposite—forming Notorious B.I.G., LLC (the "Company") under Delaware law to manage the late rapper's intellectual property. This litigation was perhaps the inevitable result.

Wallace's mother passed away in 2025. In her will, she left her interest in the Company to a trust, which the Company's LLC Agreement identified as a transferee "permitted" to receive membership units. Originally, Wallace's mother had named her grandson as a successor trustee. Just weeks before she died, however, she amended the trust agreement to remove her grandson and name the plaintiff as the sole trustee. The plaintiff then attempted to effectuate the trust agreement by asserting the trust's rights to membership units in the Company. Presumably angered by the affront to her son, the defendant-widow took the position that the LLC Agreement prohibited the transfer of membership units to the trust and refused to make distributions to the trust.

The plaintiff filed this action, seeking in part a declaration that the trust is a member of the Company. The plaintiff has moved for partial summary judgment on that claim. This decision grants the plaintiff's motion for summary judgment and dismisses the defendant's mirror-image counterclaim.

---

[1] The Notorious B.I.G., *Ten Crack Commandments*, *on* Life After Death (Bad Boy Records 1997).

## I. FACTUAL BACKGROUND

Drawn from the pleadings and exhibits submitted by the parties, the following facts are undisputed.[2]

Notorious B.I.G., LLC is a Delaware LLC formed in 2007 by Voletta Wallace and Faith Evans. Voletta and Evans are the mother and widow, respectively, of the late rapper Christopher Wallace, also known as "The Notorious B.I.G."[3] They formed the Company to manage the intellectual property created and owned by Christopher Wallace.[4]

On March 8, 2023, Voletta and Evans signed an Amended and Restated Operating Agreement of Notorious B.I.G., LLC (the "LLC Agreement").[5] The LLC Agreement contains a Delaware choice-of-law provision.[6] The LLC Agreement designated Voletta and Evans as Managers of the Company.[7]

Voletta and Evans each owned 50% of the membership "Units" and were the sole Members of the Company.[8] Through the LLC Agreement, Voletta and Evans

---

[2] This decision cites to exhibits to transmittal affidavits and declarations accompanying the parties' briefing on the plaintiff's motion for summary judgment by the docket entry and "Ex." letter. At times, this decision refers to individuals by their first names to distinguish them. The court intends no familiarity or disrespect.

[3] C.A. No. 2025-0760-KSJM, Docket ("Dkt.") 78, Decl. of Faith Evans ("Evans Decl."), Ex. AA ("Pennsylvania Petition") ¶¶ 7, 8.

[4] Dkt. 71, Decl. of Wayne Barrow ("Barrow Decl."), Ex. E ("LLC Agreement") § 3.1(c).

[5] *Id.*

[6] *Id.* § 13.10.

[7] *Id.* §§ 1.1 (defining "Member"), 6.1(a).

[8] *Id.*, Schedule A; see also, *id.* § 1.1 (defining "Units")

2

each assigned half of their interests in distributions to Christopher Wallace's children, Ty'anna Wallace and Christopher Jordan Wallace ("CJ").[9] As a result, Voletta, Ty'anna, CJ, and Evans were each entitled to 25% of the Company's distributions.

The LLC Agreement includes provisions that govern the admission of new members.[10] It states that, "[s]ubject to the terms and conditions of this Agreement, at any time and from time to time, any Person acceptable to the Members, by unanimous vote, may become a Member of the Company for such consideration, and upon such other terms and conditions, as the Members shall unanimously agree."[11]

The LLC Agreement also governs the transfer of membership Units. It provides that a Member may assign or transfer its membership Units, directly or indirectly, to a "Permitted Transferee" "who executes an instrument in form and substance reasonably satisfactory to the Manager, assuming the rights and obligations of such Member under this [LLC] Agreement."[12]

The LLC Agreement identifies the "Voletta Wallace Revocable Trust u/a/d December 14, 2020" (the "Trust") as one of two Permitted Transferees.[13] Voletta created the Trust under an agreement dated December 14, 2020 (the "Trust

---

[9] *Id.* § 4.10(b); Barrow Decl., Ex. F ("Will") art. I.

[10] LLC Agreement § 5.3.

[11] *Id.*

[12] *Id.* § 8.1. This decision quotes Sections 8.1 and 5.3 in full in the Legal Analysis.

[13] *Id.* § 1.1 (defining "Permitted Transferee").

3

Agreement") and served as the Trust's grantor and trustee.[14]  As originally drafted, the Trust Agreement named as successor trustees CJ, Voletta's friend Carol Sampson, and Plaintiff Wayne Barrow,[15] and bequeathed Voletta's interest in the Company to the Voletta Wallace Foundation.[16]

Also on December 14, 2020, Voletta executed a Last Will and Testament (the "Will").  The Will left Voletta's estate to the Trust on her death.[17]  The Will named CJ, Sampson, and Plaintiff as executors.[18]

On February 6, 2025, Voletta amended the Trust Agreement (the "Trust Amendment").[19]  The Trust Amendment removed CJ and Sampson as successor trustees, leaving Plaintiff as the sole trustee.  The Amendment also removed the provision specifically bequeathing Voletta's interest in the Company to the Voletta Wallace Foundation and directed the Trustee to distribute any assets not specifically bequeathed to the Christopher Wallace Memorial Foundation.[20]  On the same day, Voletta executed a codicil to the Will (the "Codicil") that removed CJ and Sampson as executors, leaving Plaintiff as the sole executor of Voletta's estate.[21]

---

[14] Barrow Decl., Ex. H (Trust Agreement) at 1.

[15] *Id.* art. XVII.

[16] *Id.* art. VI.

[17] Will art. III.

[18] *Id.* art. V.

[19] Barrow Decl., Ex. I ("Trust Amendment").

[20] *Id.* §§ 6, 12, 13; Trust Agreement at art. VII.

[21] Barrow Decl., Ex. G.

Voletta passed away on February 21, 2025.[22] On March 6, Plaintiff accepted his appointment as a successor trustee of the Trust.[23] On April 21, the Register of Wills of the Commonwealth of Pennsylvania, County of Monroe, issued Letters Testamentary in Voletta's estate to Plaintiff as executor of the estate.[24]

On Voletta's death, Evans became the sole Manager of the Company and stopped making distributions to the Trust.[25] Plaintiff requested distributions by an email dated April 4, 2025.[26] Evans responded by disputing the Trust's status as a Member and stating that "[n]o distribution . . . will be made unless verification has been secured."[27]

Plaintiff filed this action on July 2, 2025, asserting four claims against Evans and the Company (together, "Defendants"):

- In Counts I and II, Plaintiff seeks declaratory judgments that the Trust is a Member of the Company and is entitled to distributions, respectively.[28]

- In Count III, Plaintiff seeks an inspection of the Company's books and records under 6 *Del. C.* § 18-305.[29]

---

[22] Barrow Decl., Ex. B ¶ 38.

[23] Barrow Decl., Ex. J.

[24] Barrow Decl., Ex. K.

[25] Barrow Decl., Ex. B ¶¶ 6, 39.

[26] Barrow Decl., Ex. R at 2.

[27] *Id.* at 1.

[28] Dkt. 1 (Compl.) ¶¶ 63–78.

[29] *Id.* ¶¶ 79–86.

- In Count IV, Plaintiff seeks specific performance of the LLC Agreement's deadlock provision to remove Evans as Manager.[30]

Plaintiff also filed motions to expedite and for a status quo order requiring that the Company provide Plaintiff and the Trust ten days' notice of any action that would trigger Member consent rights under the LLC Agreement. The court granted both motions on August 4, 2025.[31] On August 25, Defendants filed an answer and a mirror-image counterclaim seeking a declaration that the Trust is not a Member of the Company.[32]

On December 12, Plaintiff signed a written consent under Section 8.1 of the LLC Agreement as trustee of the Trust (the "Written Consent").[33] In the Written Consent, Plaintiff assumed Voletta's rights and obligations under the LLC Agreement.[34] Evans received the Written Consent but objects to "both the form and substance."[35]

The court granted Plaintiff's request for leave to move for partial summary judgment on whether the Trust is a Member of the Company.[36] On April 17, 2026, Plaintiff moved for summary judgment on Counts I and II and moved to dismiss

---

[30] *Id.* ¶¶ 87–94.

[31] Dkts. 23, 24.

[32] Dkt. 27.

[33] Barrow Decl., Ex. L (Written Consent).

[34] *Id.* ¶ 1.

[35] Evans Decl. ¶¶ 46, 48.

[36] Dkt. 68.

Defendants' counterclaim.[37]  The parties completed briefing on May 5 and the court heard argument on May 11.[38]

## II.  LEGAL ANALYSIS

"Under Court of Chancery Rule 56, summary judgment may be granted if 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'"[39]  "There is no right to a summary judgment."[40]  "Even where the facts are not in dispute, a court may decline to grant summary judgment where a more thorough exploration of the facts is needed to properly apply the law to the circumstances."[41]  "When an ultimate fact to be determined is one of motive, intention or other subjective matter, summary judgment is ordinarily

[37] Dkt. 71.

[38] Dkts. 80, 85.  Meanwhile, on February 20, 2026, CJ filed a petition in Pennsylvania Orphans' Court seeking to revoke the Codicil and Trust Amendment (the "Pennsylvania Litigation").  Pennsylvania Petition; Evans Decl. ¶ 49.  There, CJ challenges Plaintiff's position as sole executor and trustee, alleging Plaintiff's undue influence over Voletta and his conflicts with Voletta's heirs.  Pennsylvania Petition ¶¶ 50–57.  On March 4, Defendants filed a motion to stay resolution of the motion for summary judgment in favor of the Pennsylvania Litigation.  Dkt. 61.  The court denied the motion to stay in a separate decision.  Dkt. 87.

[39] *Steward Health Care Sys. LLC v. Tenet Bus. Servs. Corp.*, 2023 WL 5321484, at *9 (Del. Ch. Aug. 18, 2023) (quoting *Roma Landmark Theaters, LLC v. Cohen Exhibition Co.*, 2021 WL 2182828, at *6 (Del. Ch. May 28, 2021)).

[40] *Stone & Paper Invs., LLC v. Blanch*, 2020 WL 6373167, at *1 (Del. Ch. Oct. 30, 2020) (quoting *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002)).

[41] *In re Tri-Star Pictures, Inc., Litig.*, 1995 WL 106520, at *5 (Del. Ch. Mar. 9, 1995); *see also In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 2014 WL 2768782, at *9 (Del. Ch. June 12, 2014) ("[T]he court may, in its discretion, deny summary judgment if it decides upon a preliminary examination of the facts presented that it is desirable to inquire into and develop the facts more thoroughly at trial in order to clarify the law or its application." (citing *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 792 A.2d 1141, 1150 (Del. 2002) and *Alexander Indus., Inc. v. Hill*, 211 A.3d 917, 918–19 (Del. 1965))).

inappropriate."[42]  The court may "decline to decide the merits of the case in a summary adjudication where it is not reasonably certain that there is no triable issue."[43]

"Summary judgment is particularly appropriate in a dispute over an unambiguous contract because there is no need to resolve material disputes of fact."[44] The proper interpretation of language in a contract is a question of law.[45]  According to the Delaware Supreme Court, "a contract is only ambiguous when the provisions in controversy are reasonably or fairly susceptible to different interpretations or may have two or more different meanings."[46]  In addition, "ambiguity does not exist where the court can determine the meaning of a contract without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends."[47]

---

[42] *Cont'l Oil Co. v. Pauley Petroleum, Inc.*, 251 A.2d 824, 826 (Del. 1969); *see also Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*, 2009 WL 3756700, at *4 (Del. Ch. Nov. 9, 2009) (citing *Johnson v. Shapiro*, 2002 WL 31438477, at *4 (Del. Ch. Oct. 18, 2002)).

[43] *Unbound P'rs Ltd. P'ship v. Invoy Hldgs. Inc.*, 251 A.3d 1016, 1024 (Del. Super. Ct. 2021) (cleaned up) (quoting *Parexel Int'l (IRL) Ltd. v. Xynomic Pharms., Inc.*, 2020 WL 5202083, at *4 (Del. Super. Ct. Sep. 1, 2020)) (interpreting the parallel rule of the Delaware Superior Court).

[44] *XO Commc'ns, LLC v. Level 3 Commc'ns, Inc.*, 948 A.2d 1111, 1124 (Del. Ch. 2007) (quoting *NBC Universal, Inc. v. Paxson Commc'ns Corp.*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005) (internal quotation marks omitted)).

[45] *Pellaton v. Bank of N.Y.*, 592 A.2d 473, 478 (Del. 1991).

[46] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288 (Del. 2001) (citing *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992)).

[47] *Id.* (quoting *Rhone–Poulenc Basic Chems. Co.*, 616 A.2d at 1196) (internal quotation marks omitted).

Plaintiff seeks summary judgment on his claim that the Trust is a Member of the Company. He argues that the Trust is a Member because it is a Permitted Transferee under Section 8.1 of the LLC Agreement, and Voletta validly transferred her interests to the Trust.[48]

Section 8.1 states:

> [N]o Member will be permitted to, directly or indirectly, sell, pledge, assign, transfer or otherwise dispose of or encumber all or any part of such Member's Units, except to a Permitted Transferee of such Member who executes an instrument in form and substance reasonably satisfactory to the Manager, assuming the rights and obligations of such Member under this Agreement.[49]

Section 8.1 imposes two conditions. It allows an existing Member to transfer "all" of its Units to: (i) a party identified as a "Permitted Transferee," so long as (ii) the Permitted Transferee executes an instrument that is "reasonably satisfactory to the Manager." Plaintiff further argues that the Trust is both a Permitted Transferee and complied with Section 8.1.

Defendants deny that compliance with Section 8.1 suffices to make the Trust a Member. According to Defendants, the Trust must also satisfy Section 5.3.[50] Section 5.3 states:

> Subject to the terms and conditions of this Agreement, at any time and from time to time, any Person acceptable to the Members, by unanimous vote, may become a Member of the Company for such consideration, and upon such

---

[48] Dkt. 71 ("Pl.'s Opening Br.") at 11–12.

[49] LLC Agreement § 8.1.

[50] Dkt. 78 ("Defs.' Answering Br.") at 22–23.

> other terms and conditions, as the Members shall unanimously agree.[51]

Section 5.3 requires prospective Members to be formally admitted by unanimous consent of all existing Members. Defendants thus argue that without unanimous consent, the Trust is merely an assignee of Voletta's interests with no governance or distribution rights.

Defendants' interpretation of Sections 5.3 and 8.1 fails at many levels. For starters, Section 8.1's reference to "rights and obligations" and "all" (or the entirety) of a Member's Units means that a Member may transfer all rights and obligations attendant to a Member's Units to a Permitted Transferee.[52] Section 5.3 does not state that it is the exclusive means for becoming a Member under the LLC Agreement. Rather, Section 5.3 states that its terms are "[s]ubject to the terms and conditions" elsewhere in the LLC Agreement.[53] Section 8.1 includes no such qualifier, meaning Section 5.3 is subject to Section 8.1—not the inverse. And Section 8.1 is more specific than Section 5.3, implying that Section 8.1 covers Permitted Transferees and Section 5.3 covers every other potential Member.[54]

---

[51] LLC Agreement § 5.3.

[52] *Id.* § 1.1 (defining "Units" and "Membership Interest"); *cf. Achaian, Inc. v. Leemon Fam. LLC*, 25 A.3d 800, 809 (Del. Ch. 2011) (explaining that authorization to transfer "all" of a membership interest includes the transfer of one's status as a member); *Lusk v. Elliott*, 1999 WL 644739, at *1, *5 (Del. Ch. Aug. 13, 1999) (concluding that the assignment of a member's "entire undivided membership interest" under an operating agreement included membership status, voting rights, and management rights).

[53] LLC Agreement § 5.3.

[54] *See DCV Hldgs., Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general

10

Thus, whether the Trust is entitled to summary judgment on the claim that it is a Member of the Company turns on whether the Trust has demonstrated that the Trust (i) is a Permitted Transferee and (ii) executed an instrument that is reasonably satisfactory to the Manager.

The Trust has demonstrated that it is a Permitted Transferee. Although the LLC Agreement expressly identifies the "Voletta Wallace Revocable Trust u/a/d December 14, 2020" as a Permitted Transferee,[55] Defendants dispute this point. The LLC Agreement states that the Voletta Wallace Revocable Trust "under agreement *dated December 14, 2020*" is a Permitted Transferee. Defendants argue that the inclusion of "u/a/d December 14, 2020" was "a deliberate act of identification designating one specific legal entity, governed by one specific instrument, as qualifying for Permitted Transferee status."[56] According to Defendants, the "Amended Trust is not the trust designated in the [] LLC Agreement."[57]

Effectively, Defendants ask the court to conclude that the Trust as amended is not the same entity identified as a Permitted Transferee. This is not how Delaware law works. Parties do not form a new entity by amending a constitutive agreement.

---

provisions conflict, the specific provision ordinarily qualifies the meaning of the general one.").

[55] LLC Agreement § 1.1.

[56] Dkt. 78 ("Defs.' Answering Br.") at 27.

[57] *Id.*

11

Only a sovereign has the power to grant a new legal personality. As this court in *In re Carlisle Etcetera LLC*[58] explained in the LLC context:

> [A]n LLC agreement is not an exclusively private contract among its members [] because the LLC has powers that only the State of Delaware can confer.[59]

The Supreme Court later extended this reasoning to other forms of alternative entities.[60] And the logic extends to trusts as well. The State of Delaware did not grant the Trust that new existence when Voletta amended it. As viewed by the State of Delaware, *the Trust* is the entity identified as a Permitted Transferee under the LLC Agreement.

Moreover, it is the "fundamental proposition" that "the settlor of a revocable trust may amend its terms freely in any way that is not unlawful or in contravention against public policy."[61] And the Trust Agreement executed on December 14, 2020 recognized Voletta's right to amend or revoke the agreement at any time, including by removing trustees.[62] Evans was on notice of this provision when she agreed to include the Trust as a Permitted Transferee. Had she wished for an amendment to

---

[58] 114 A.3d 592 (Del. Ch. 2015).

[59] *Id.* at 605–06.

[60] *Holifield v. XRI Inv. Hldgs. LLC*, 304 A.3d 896, 925–26 (Del. 2023) (discussing *Totta v. CCSB Fin. Corp.*, 2022 WL 1751741 (Del. Ch. May 31, 2022), *aff'd*, 302 A.3d 387 (Del. 2023)); *see Totta*, 2022 WL 1751741, at *17 n.193 (quoting, *inter alia*, *Carlisle*, 114 A.3d at 605).

[61] *Mitchell v. Reynolds*, 2009 WL 132881 (Del. Ch. Jan. 6, 2009) (citing Restatement (Third) of Trusts §§ 29, 63, 63 cmts. a, g, 74 (Am. L. Inst. 2003); George Taylor Bogert, Handbook of the Law of Trusts § 47 (6th ed. 1987)).

[62] Trust Agreement art. XXI.

the Trust Agreement to deprive the Trust of its status as a Permitted Transferee, the parties could have contracted for this restriction. But including "u/a/d December 14, 2020" after the name of the Trust does not accomplish this restriction.

Defendants next argue that Voletta's membership interest cannot be transferred to the Trust because the Trust's "ultimate beneficiary is not a Permitted Transferee under the [] LLC Agreement."[63] And Plaintiff "cannot use the Trust as a pass-through vehicle to accomplish indirectly what he . . . would be prohibited from accomplishing directly."[64] But Plaintiff does not ask the court to approve a transfer of Voletta's Member Units to the Christopher Wallace Memorial Foundation. Rather, Plaintiff seeks a declaration that *the Trust* is a Permitted Transferee.

The Trust also executed an instrument reasonably satisfactory to the Manager. On December 12, 2025, Plaintiff signed the Written Consent agreeing to "assume any and all rights and obligations held by Ms. Wallace under the [LLC] Agreement" and "be bound by all of the terms contained in the [LLC] Agreement."[65] Defendants do not dispute that Plaintiff executed the Written Consent. They claim that the Written Consent does not satisfy Section 8.1's requirements because Evans never consented to the form or substance of the Written Consent and was not given the opportunity to

---

[63] Defs.' Answering Br. at 31.

[64] *Id.* at 32.

[65] Written Consent ¶¶ 1–2.

do so before Plaintiff executed it.[66] Evans also states that she does not approve the Written Consent but does not raise any substantive objections.[67]

The LLC Agreement does not require Evans's prior approval of the Written Consent. The LLC Agreement only requires that the Written Consent be "reasonably satisfactory" to Evans. The LLC Agreement's use of the term "reasonably" requires the court to "make an objective determination, as in what 'a reasonable person would believe,' rather than deferring to the good faith judgment" of Evans.[68]

Section 8.1 requires that the Trust "execute[] an instrument . . . assuming the rights and obligations of [Voletta] under [the LLC Agreement]."[69] The Written Consent states that Plaintiff, as the Trust's sole trustee, "assume[s] any and all rights and obligations held by Ms. Wallace under the [LLC] Agreement."[70] Under an objective standard, the Written Consent satisfies the requirements of Section 8.1 of the LLC Agreement.[71]

---

[66] Defs.' Answering Br. at 29–30.

[67] Evans Decl. ¶ 48.

[68] *See In re Riviera Res., Inc.*, 291 A.3d 1091, 1099 (Del. Ch. 2023) (quoting *In re Altaba, Inc.*, 264 A.3d 1138, 1164 n.19 (Del. Ch. 2021)); *Allen v. Encore Energy P'rs, L.P.*, 72 A.3d 93, 104 (Del. 2013).

[69] LLC Agreement § 8.1.

[70] Written Consent ¶ 1.

[71] Plaintiff argues in the alternative that, even if he is not entitled to summary judgment on the Trust's status as a Member of the LLC, he is entitled to exercise Member-level rights to administer and settle the estate. *See* Pl.'s Opening Br. at 14–15. Plaintiff also argues that Defendants are estopped from denying the Trust's status as a Member because they acknowledged Plaintiff's status when they asked him to execute a "Member Consent" on behalf of the Trust authorizing Evans to execute an Asset Purchase Agreement. *See* Pl.'s Opening Br. at 15–17. Because this

## III. CONCLUSION

Summary judgment on Counts I and II is entered in favor of Plaintiff. Defendants' counterclaim is dismissed.

decision holds that the Trust is a Member of the Company under the plain text of the LLC Agreement, the court does not reach Plaintiff's alternative arguments.